1  Jennifer Robinson, Bar No. 252137
   jenrobinson@littler.com
2  LITTLER MENDELSON P.C.
   333 Commerce Street, Suite 1450
3  Nashville, Tennessee  37201
   Telephone:  615.383.3033  Fax No:  615.383.3323
4
   Elizabeth Staggs-Wilson, Bar No. 183160
5  estaggs-wilson@littler.com
   LITTLER MENDELSON P.C.
6  633 West 5th Street, 63rd Floor
   Los Angeles, California 90071
7  Telephone:  213.443.4300  Fax No:  213.443.4299

8  Jyoti Mittal, Bar No. 288084
   jmittal@littler.com
9  LITTLER MENDELSON, P.C.
   2049 Century Park East, 5th Floor
10 Los Angeles, CA  90067.3107
   Telephone:  310.553.0308  Fax No.:  310.553.5583
11
   Attorneys for Defendant
12 MARS PETCARE US, INC.

13                 UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15

16 ENRIQUE MARTINEZ-SALGADO,              Case No.   5:21-cv-1601
   individual and class representative on
17 behalf of himself and all other similarly   **DEFENDANT MARS PETCARE US,**
   situated non-exempt former and current  **INC.'S NOTICE OF REMOVAL OF**
18 employees,                             **ACTION FROM STATE COURT TO**
                                          **THE UNITED STATES DISTRICT**
19                                        **COURT**

20                  Plaintiff,            **[28 U.S.C. §§1332, 1441, & 1446]**

21      vs.                               Complaint Filed:  September 9, 2020
                                          FAC Filed:  December 30, 2020
22 RED COLLAR PET FOODS, INC., a          (San Bernardino Superior Court)
   Delaware Corporation; MARS PETCARE
23 US, INC., a Delaware corporation and
   DOES 1 through 100, inclusive,
24
                   Defendants.
25

26

27

28

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF ENRIQUE MARTINEZ-SALGADO AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant Mars Petcare US, Inc. ("Mars Petcare" or "Defendant") hereby removes the above-entitled action brought by Plaintiff Enrique Martinez-Salgado ("Plaintiff") in the Superior Court of the State of California, County of San Bernardino,[1] to the United States District Court for the Central District of California, pursuant to 28 U.S.C. section 1332(d) (Class Action Fairness Act of 2005), 1441(a) and (b), and 1446 on the following grounds:

## I.   STATEMENT OF JURISDICTION

1.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §1332(D).  CAFA authorizes removal of such actions in accordance with United States Code, title 28, section 1446.  As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## II.   VENUE

2.    This action was filed in the Superior Court for the State of California in the County of San Bernardino.  Furthermore, Plaintiff was employed in San Bernardino County by Defendant.  *See* Ex. 4 (First Amended Complaint adding an additional cause of action for Civil Penalties for Violations of California Labor Code, Pursuant to the Private Attorneys General Act of 2004; Cal. Lab. Code §2698, et seq. ("PAGA")

---

[1] This matter was filed by Plaintiff in the Superior Court of the State of California, County of San Bernardino, and subsequently coordinated with two other class and/or representative actions as *In re: Mars Petcare Wage and Hour Cases*, JCPDS5093.

("FAC")") ¶ 12. Thus, Venue properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 84, 1391, 1441, and 1446.

## III.    PLEADINGS, PROCESS, AND ORDERS

3.    On September 9, 2020 Plaintiff, on behalf of himself and all others similarly situated, commenced this action by filing a class action complaint in the Superior Court of California, County of San Bernardino entitled *Enrique Martinez-Salgado v. Red Collar Pet Foods, Inc., ad Delaware Corporation; Mars Petcare US, Inc., a Delaware corporation; and DOES 1 through 100, inclusive,* designated as Case No. CIVDS2018708 ("Complaint"). The Complaint asserted the following causes of action on behalf of Plaintiff and the putative class against all defendants, including Mars Petcare: (1) Failure to Provide Meal Periods [Cal. Labor Code §§ 226.7, 510, 512, 1194, 1197, and IWC Wage Order No. 1-2001, § 11]; (2) Failure to Provide Rest Periods [Cal. Labor Code §§ 226.7, 512, and IWC Wage Order No. 1-2001, § 12]; (3) Failure to Pay Overtime Wages [Cal. Labor Code §§ 510, 1194, 1198 and IWC Wage Order No. 1-2001, § 3]; (4) Failure to Pay Minimum Wages [Cal. Labor Code §§ 1194, 1197, and IWC Wage Order No. 1-2001, § 4]]; (5) Failure to Timely Pay Wages During Employment [Cal. Labor Code § 204]; (6) Failure to Pay All Wages Due to Discharged and Quitting Employees [Cal. Labor Code §§ 201, 202, and 203]; (7) Failure to Maintain Required Records [Cal. Labor Code §§ 226, 1174; IWC Wage Order No. 1-2001, § 7]; (8) Failure to Furnish Accurate Itemized Wage Statements [Cal. Labor Code §§ 226; IWC Wage Order No. 1-2001, § 7]; (9) Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties [Cal. Labor Code § 2802]; and, (10) Unfair Business Practices [Cal. Bus. & Prof. Code § 17200 *et seq*.]. A summons also was issued by the Court on September 9, 2020. A true and correct copy of the Summons and Complaint are attached collectively to this Notice as **Exhibit 1** pursuant to 28 U.S.C. §1446(a).

4.    On or about October 1, 2020, Plaintiff served the Complaint with its attachments on Mars Petcare through its agent for service of process. Among with the

Summons, Complaint, and Civil Case Cover Sheet, Plaintiff also served Mars Petcare with a Certificate of Assignment.  True and correct copies of these documents served on Defendant are attached to this Notice of Removal as **Exhibit 3.**

5.     On or about December 30, 2020, Plaintiff filed the FAC.  A true and correct of FAC is attached to this Notice of Removal as **Exhibit 12**.

6.     On or about January 27, 2021, Mars Petcare filed an Answer to the FAC. A true and correct copy of the Answer is attached to this Notice of Removal as **Exhibit 14**.

7.     Pursuant to 28 U.S.C. § 1446, Defendant is concurrently filing a "Supplemental Notice In Support of Removal re Process, Pleadings, And All Orders" containing copies of all process, pleadings, and orders served upon Defendant, which is incorporated by reference as if stated herein.

8.     To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in the San Bernardino County Superior Court or served by any party other than as described above and in the concurrently filing a "Supplemental Notice In Support of Removal re Process, Pleadings, And All Orders."

**IV.** **TIMELINESS OF REMOVAL**

9.     This Notice of Removal is timely.  Pursuant to 28 U.S.C. § 1446(b), a defendant must file a notice of removal within thirty days from the date it first objectively learns that an action is removable.  A defendant may learn that an action is removable in one of two ways: (1) through the face of the initial pleadings or (2) through the receipt "of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(1) & (b)(2)(C)(3) (emphasis added)

10.    This Notice of Removal is timely. 28 U.S.C. § 1446(b) provides two 30-day windows for removing a case.  Section 1446(b)(1) specifies that a defendant must remove "within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action

or proceeding is based." 28 U.S.C. § 1446(b)(1). If, however, "the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). In addition, the Ninth Circuit has held that a defendant may remove "when it discovers, based on its own investigation, that a case is removable." *Roth v. CHA Hollywood Med. Ctr.*, 720 F.3d 1121, 1123 (9th Cir. 2013). Thus, the two 30-day periods set forth in section 1446(b) are not the exclusive periods for removal. *Id.* At 1125 ("We conclude that §§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines.") In short, a CAFA case "may be removed at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered." *Roth, supra,* 720 F.3d at 1126. *See also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) ("[A]s long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable," a defendant, in effect, "may remove at any time.").

11. To trigger the 30-day removal periods under § 1441(b), the grounds for removal must be evident from the face of the pleadings. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). That is, the determination of removability is based on the "four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Id.* If it is unclear from the complaint whether the case is removable, the pleadings are considered "indeterminate," and the 30-day removal window is not triggered. *Id.* at 693. A "defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability." *Roth, supra,* 720 F.3d at 1125. "Even the simplest of inquiries is not required….[D]efendants are not charged with *any* investigation, not even into their own records." *Stiren v. Lowes Home Ctrs.,* LLC, 2019 U.S. Dist. LEXIS 74656, *709 (C.D.

LITTLER MENDELSON P.C.
333 Commerce Street
Suite 1450
Nashville, TN 37201
615.383.3033

Cal. May 2, 2019). Accordingly, "even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Roth, supra,* 720 F.3d at 1125; *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018).

12.    Here, Plaintiff's FAC is clearly indeterminate. It does not state the specific number of people in the class, does not specify anyone's rates of pay, and does not provide any substantive facts regarding the basis for Plaintiff's claims. *See, e.g., Zhao v. RelayRides, Inc.*, 2017 U.S. Dist. LEXIS 204415, *32 (N.D. Cal. Dec. 12, 2017) (plaintiff's complaint "did not reveal on its face that the action was removable under CAFA" where it "contained no specific allegations regarding the size of the two proposed classes (including whether there were more than 100 class members), or the amount of either [the plaintiff's] damages or the damages of the class as a whole"); *Trahan v. U.S. Bank Nat'l Ass'n*, 2014 U.S. Dist. LEXIS 4019, *11-12 (documents were indeterminate and did not trigger 30-day removal deadline where they "did not expressly state that the amount in controversy would exceed $5,000,000…and did not make any specific assertions about the amount of damages that might be available to the class or the value of injunctive relief"). Nor has Defendant received any other "pleading, motion, order or other paper" in this matter that revealed on its fact that this matter was removable under CAFA. As Defendant remained free to conduct its own investigation and remove at any time, this removal is timely.

## V.    CAFA JURISDICTION

13.    CAFA grants United States district courts original jurisdiction over: (a) civil class action lawsuits filed under federal or state law; (b) where the alleged class is comprised of at least 100 individuals; (c) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (d) where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(D). CAFA authorizes removal of such actions in accordance with 28 U.S.C.

§ 1446.      As set forth below, this case meets each CAFA requirement for removal, and is timely and properly removed by the filing of this Notice of Removal.

### A.  Plaintiff Filed a Class Action Under State Law

14.    Plaintiff filed his action as a class and PAGA action based on alleged violations of California state law.  FAC, ¶ 1 *see also* Caption.

### B.  The Proposed Class Contains At Least 100 Members

15.    Title 28 U.S.C. § 1332(d)(5)(B) states that the provisions of CAFA do not apply to any class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100."

16.    Plaintiff filed his action on behalf of himself and "[a]ll current and former non-exempt employees for RED COLLAR PET FOODS, INC., MARS PETCARE US, INC., and DOES 1 through 100 [] who worked at any of RED COLLAR's locations in the State of California at any time within the period beginning four (4) years prior to the filing of this action." FAC ¶ 5(a).

17.    Based on a review of Defendant's records, Defendant employed approximately 279 current and former non-exempt associates in California from September 9, 2016, until the present.   Accordingly, Defendant's internal records demonstrate that there are well over 100 putative class members in this case.  *Id*.

### C.  Defendant Is Not A Governmental Entity

18.    Under 28 U.S.C. § 1332(d)(5)(B), CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

19.    Defendant is not a state, state official, or other governmental entity.

### D.  There Is Diversity Between At Least One Class Member, Mars Petcare, and Co-Defendant Red Collar Pet Foods, Inc.

20.     CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b).  In a class action, only the citizenship of the

LITTLER MENDELSON P.C.
333 Commerce Street
Suite 1450
Nashville, TN 37201
615.383.3033

named parties is considered for diversity purposes, and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 340 (1969). Additionally, for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal. *See Strotek Corp. v. Air Trans. Ass'n of Am.*, 300 F.3d 1129, 1130-1131 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiff, Mars Petcare, and co-Defendant Red Collar Pet Foods, Inc. ("Red Collar") (Mars Petcare and Red Collar are collectively, "Defendants") are citizens of different states.

21. For diversity purposes, a person is a "citizen" of the state in which he is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that person's domicile is the place he resides with the intention to remain)

### 1. Plaintiff Is A Citizen of California.

22. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983); *see also LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2d Cir. 2001) (citizenship determined at the time the lawsuit is filed); *see also Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir. 1991). A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. *See Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

23. At the time of the filing of the FAC, Plaintiff was a resident and citizen of the State of California. Plaintiff specifically alleges he "is a resident of the State of California." FAC ¶ 3; *see Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (residency can create a rebuttable presumption of domicile supporting diversity of citizenship); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008

LITTLER MENDELSON P.C.
333 Commerce Street
Suite 1450
Nashville, TN 37201
615.383.3033

U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of domicile).

24.     Defendant has thus established by a preponderance of the evidence that Plaintiff resides and is domiciled in California, and is thus, a citizen of California.  FAC ¶ 3; *Lew*, 797 F.2d at 751; *Smith*, 2008 WL 744709, at *7.

## 2.     No Defendant is a Citizen of California.

25.     Conversely, Defendants are not citizens of California.  "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  The Supreme Court has explained that a corporation's principal place of business is determined under the "nerve center" test. *See Hertz Corp. v. Friend,* 599 U.S. 77, 80-81 (2010). Under the "nerve center" test, the principal place of business is the state where "a corporation's officers direct, control, and coordinate the corporation's activities." *Id.*  The Supreme Court further explained in *Hertz* that a corporation's nerve center "should normally be the place where the corporation maintains its headquarters" and that a corporation's nerve center is a "single place." *Id.* at 93.

26.     For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  The United States Supreme Court has confirmed that to determine a corporation's principal place of business, a court must apply the "nerve center" test.  *See Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).  In relevant part, the Court explained, as follows:

> We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Id.*, at 1041-42.

27.     The "nerve center" test of a corporation's principal place of business looks to the place in which the corporation's executives and administrative functions are located. *Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862 (S.D.N.Y. 1959) (corporation's principal place of business was New York, where its management was located, rather than Connecticut where most of its manufacturing was done); *see also Diaz-Rodriguez v. Pep Boys Corp.*, 410 F. 3d 56, 60 (1st Cir. 2005) (nerve center test governs where corporation has "complex" and "far flung" activities).

28.     Defendant is incorporated in the State of Delaware and has its principal place of business and headquarters is Tennessee, because its executive, operational and administrative offices and functions are located in Tennessee. *See Breitman v. May Co.*, 37 F.3d 562, 564 (9th Cir. 1994) (corporation is citizen of state in which its corporate headquarters are located and where its executive and administrative functions are performed); FAC ¶¶ 11, 12.  Accordingly, citizenship of Mars Petcare is Delaware and Tennessee.

29.     Red Collar is incorporated in the State of Delaware and has its principal place of business and headquarters is Tennessee, because its executive, operational and administrative offices and functions are located in Tennessee. *See Breitman v. May Co.*, 37 F.3d 562, 564 (9th Cir. 1994) (corporation is citizen of state in which its corporate headquarters are located and where its executive and administrative functions are performed); FAC ¶¶ 11, 12.  Accordingly, citizenship of Red Collar is Delaware and Tennessee.[2]

30.     The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be

---

[2] Note, under CAFA, one defendant may remove the entire action and no other co-defendant can defeat that removal. *Abrego v. Dow Chemical,* 443 F.3d 676, 681 (9th Cir. 2006); *United Steel, Paper & Forestry v. Shell Oil*, 549 F.3d 1204, 1208 (9th Cir. 2008).

LITTLER MENDELSON P.C.
333 Commerce Street
Suite 1450
Nashville, TN 37201
615.383.3033

disregarded."); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998). Defendants "Does 1 through 10" are wholly fictitious. The FAC does not set forth the identity or status of any fictitious defendants, nor does it set forth any charging allegation against any fictitious defendants. Thus, pursuant to 28 U.S.C. section 1441(a), the citizenship of defendants sued under fictitious names must be disregarded for purposes of determining diversity jurisdiction and cannot destroy the diversity of citizenship between the parties in this action. *See Newcombe*, 157 F.3d at 690-91.

31.     Accordingly, the named Plaintiff is a citizen of a state (California) different from both Mars Petcare and Red Collar (Delaware and Tennessee), and diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453

### E. Amount In Controversy Exceeds $5,000,000[3]

32.     This Court has jurisdiction under the CAFA, which authorizes the removal of class actions in which, among the other factors mentioned above, the amount in controversy for all class members exceeds $5,000,000.  28 U.S.C. § 1332(d). "The claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" this amount.  28 U.S.C. § 1332(d)(6).

33.     The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).  The Supreme Court, in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), recognized that "as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  The defendant's "amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id*. at 553.

34.     Defendant denies the validity and merit of the entirety of Plaintiff's alleged

---

[3] The alleged damages calculations contained herein are for purposes of removal only. Defendant denies that Plaintiff or the putative class are entitled to any relief whatsoever and expressly reserve the right to challenge Plaintiff's alleged damages in this case.

LITTLER MENDELSON P.C.
333 Commerce Street
Suite 1450
Nashville, TN 37201
615.383.3033

claims, the legal theories upon which they are ostensibly based, and the alleged claims for monetary and other relief that flow therefrom.  For purposes of removal only, however, and without conceding that Plaintiff or the putative class are entitled to any damages or penalties whatsoever, it is readily apparent that the aggregated claims of the putative class establishes, by a preponderance of evidence, that the amount in controversy well exceeds the jurisdiction minimum of $5,000,000.  *See Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (the "amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [D]efendant's liability"); *see also Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. Cal. 2013) (a defendant "may remove when it discovers, based on its own investigation, that a case is removable.").

35.     For purposes of determining whether a defendant has satisfied the amount in controversy requirement, the Court must presume that the Plaintiff will prevail on his claims.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability.").  The ultimate inquiry is what amount is put "in controversy" by plaintiff's complaint, not what defendant might actually owe.  *Rippee v. Boston Mkt. Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Inv., Inc.* 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants are still free to challenge the actual amount of damages at trial because they are only estimating the amount in controversy).

36.     Here, Plaintiff does not allege the amount in controversy in the FAC.

37.     Plaintiff alleges causes of action for a violation of the Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200, *et seq.* FAC ¶¶ 56-61. Alleging a UCL violation may extend the statute of limitations for Plaintiff's and the putative class' meal and rest period claims as well as the overtime and minimum wage

claims from three to four years from the filing of the Complaint, which in this case, extends the statute of limitations to September 9, 2016. *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolater Air Filtration Products Co.*, 23 Cal.4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

38.     As noted above, from September 9, 2016, to the present, approximately 279 hourly, non-exempt associates worked for Mars Petcare. Plaintiff asserts that he is typical of the class. Compl. ¶ 14(c). Plaintiff's final rate of pay was approximately $25.41. During the time period from September 9, 2016, to present, Mars Petcare paid its hourly, non-exempt employees on a bi-weekly basis. Based on the available employment records, the time period Plaintiff has placed at issue, and the number of associates at issue, Plaintiff has placed approximately 35,420 workweeks in controversy.

39.     Plaintiff's allegations combined with the conservative calculations set forth below establish that the amount in controversy for (i) failure to pay overtime; (ii) meal period premiums; (iii) rest period premiums; (iv) failure to pay all wages due at discharge penalties; (vi) and attorneys' fees is at least **$6,449,215.**[4]

### 1.     Amount in Controversy – Meal Period Claim

40.     Plaintiff's First Cause of Action alleges that Mars Petcare "suffered PLAINTIFF and CLASS MEMBERS to take less than the 30-minute meal period, or to work through them, and have failed to otherwise provide the required meal periods." FAC ¶ 16. Plaintiff also alleges Mars Petcare did not compensate for missed or interrupted meal periods with "in accordance with the applicable wage order, one additional hour of compensation at each employee's regular rate of pay for each workday that meal period was not provided." FAC ¶ 17.

41.     Plaintiff seeks to recover all wages earned and due, interest, penalties, expenses and costs of suit pursuant to Cal. Labor Code § 226.7 dating back four years

---

[4] This calculation does not include Plaintiff's claims for unpaid minimum wages, failure to timely pay wages during employment, failure to maintain required records, failure to furnish accurate wage statements, and unpaid business reimbursements.

LITTLER MENDELSON P.C.
333 Commerce Street
Suite 1450
Nashville, TN 37201
615.383.3033

from the filing of the initial Complaint to September 9, 2016.  *See* Cal. Bus. & Prof.
Code §§ 17200 *et seq*.; FAC ¶ 19.

42.    California law permits recovery of one additional hour of pay at the
employee's regular rate of compensation for each workday a meal period was not
provided.  Cal. Lab. Code § 226.7.  The statutory period for recovery for a California
Labor Code section 226.7 claim pursued with a Business & Professions Code claim is
four years.  *See* Cal. Civ. Proc. Code § 338(A) (setting out a three-year limitations
period); Cal. Bus. & Prof. Code § 17208 (explaining the three-year statute of limitations
can be extended to four years through the pleading of a companion claim under the
UCL).

43.    Plaintiff has not placed any limits on his meal break claim. As such, at this
juncture, every meal break of every putative class member during the putative class
period is in controversy. This cause of action thus dramatically increases the amount in
controversy in this case.  For example, if Plaintiff was to succeed in proving that
putative class members were not provided compliant meal breaks twice a week for every
week that they worked, and were not paid a break premium, the amount in controversy
for the meal break claim of the putative class would be at least **$1,800,044** (35,420
workweeks x 2 days x $25.41).

**2.    Amount in Controversy – Rest Break Claim**

44.    Plaintiff's Second Cause of Action alleges that Mars Petcare "failed to
provide rest periods to PLAINTIFF and CLASS MEMBERS as required under
California Labor Code §§ 226/7 and 512, and IWC Wage Order No. 1-2001, §12." FAC
¶ 21.   Plaintiff also alleges Mars Petcare failed to pay "one additional hour of
compensation at each employee's regular rate of pay for each workday that a rest period
was not provided."  FAC ¶ 22.

45.    Plaintiff seeks to recover all wages earned and due, interest, penalties,
expenses and costs of suit pursuant to Cal. Labor Code § 226.7 dating back four years
from the filing of the initial Complaint to May 12, 2013.  *See* Cal. Bus. & Prof. Code

§§ 17200 *et seq*.; FAC ¶ 31.

46.     California law permits recovery of one additional hour of pay at the employee's regular rate of compensation for each workday a rest period was not provided.  Cal. Lab. Code § 226.7.  The statutory period for recovery for a California Labor Code section 226.7 claim pursued with a Business & Professions Code claim is four years.  *See* Cal. Civ. Proc. Code § 338(A) (setting out a three-year limitations period); Cal. Bus. & Prof. Code § 17208 (explaining the three-year statute of limitations can be extended to four years through the pleading of a companion claim under the UCL).

47.     Plaintiff has not placed any limits on his rest break claim.  As such, at this juncture, every rest break of every putative class member during the putative class period is in controversy..  This cause of action thus dramatically increases the amount in controversy in this case and, as alleged, places an equal amount in controversy as Plaintiff's meal break claim. Thus, the amount in controversy for Plaintiff's rest break claim would be at least **$1,800,044** (35,420 workweeks x 2 days x $25.41).

### 3.   Amount in Controversy – Failure to Pay Overtime Claim

48.     Plaintiff's Third Cause of Action alleges that Mars Petcare failed to compensate Plaintiff and class members for all overtime hours worked as a result of failing to pay overtime at one and a half or double the regular rate of pay, off the clock work, requiring Plaintiff and class members to work through meal and rest periods, illegally and inaccurately recording time, rounding, in addition to other claims.  FAC ¶¶ 25-26.

49.     Plaintiff seeks to recover the unpaid balance of wages allegedly owed to Plaintiff and class members plus interest, penalties, attorneys' fees, expenses and costs. FAC ¶ 28.  Plaintiff does not specifically allege how often all of the alleged overtime violations occurred.  FAC ¶ 25-28.

50.     Labor Code section 510 requires that employers pay nonexempt employees one-and-one-half times their regular rate for all hours worked over eight in a day or 40

in a week.  Additionally, nonexempt employees must be paid one-and-one-half times their regular rate for the first eight hours worked on the seventh day worked in a single workweek.  Employers must also pay double time for all hours worked over 12 in a day, and for all hours worked in excess of eight on the seventh consecutive day of work in a single workweek.  Cal. Lab. Code § 510.  Where a UCL claim is alleged, the statutory period for recovery under California Labor Code section 510 is calculated under a 4-year statute of limitations.  *See* Cal. Civ. Proc. Code § 338(a) (setting a three-year period); Cal. Bus. & Prof. Code § 17208 (the three-year statute of limitations can be extended to four years through the pleading of a companion claim under the UCL).

To determine the monetary amount in controversy for Plaintiff's overtime claim, the total number of unpaid hours worked by Plaintiff and the putative class members that would have been considered overtime hours is multiplied by one and one-half times their respective regular rates of pay in effect during the time the overtime was allegedly worked. See Cal. IWC Wage Order 5-2001, §3(A)(1)(a).

51.    Plaintiff was employed by Mars Petcare from approximately August 10, 2009, through December 3, 2018, worked full-time, and earned approximately $25.41 per hour at the time of his separation.  Plaintiff asserts that he is typical of the class. Compl. ¶ 14(C).  There are at least 279 putative class members that collectively worked approximately 35,420 weeks since September 9, 2016.  Assuming each putative class member had the same hourly wage as Plaintiff's final hourly wage, worked five shifts/days per week, and that each putative class member was required to work 0.5 hours of overtime per workweek, the amount in controversy on Plaintiff's overtime claim alone could well exceed **$675,016** (0.5 x (1.5 x $25.41) x 35,420 workweeks).[5] In sum, although Defendant vigorously denies Plaintiff's allegations, including the alleged damages, the amount in controversy with respect to his unpaid wage/overtime claim is at least **$675,016**. **Amount in Controversy – Failure to Timely Pay All Wages Due at**

---

[5] This calculation does not include workdays on which Plaintiff or putative class members may claim that putative class members worked in excess of 12 hours, which would be subject to a double-time rate.

LITTLER MENDELSON P.C.
333 Commerce Street
Suite 1450
Nashville, TN 37201
615.383.3033

1    **Discharge**

2    52.    In his Sixth Cause of Action, Plaintiff seeks waiting time penalties

3    pursuant to California Labor Code sections 201, 202, and 203, which provide that if an

4    employer willfully fails to pay wages owed at the time of termination, then the wages

5    of the employee shall continue as a penalty from the due date thereof at the same rate

6    until paid for a maximum of thirty (30) days. FAC ¶¶ 39-44.  The statute of limitations

7    for Plaintiff's Labor Code section 203 waiting time penalty claim is three years. *Pineda*

8    *v. Bank of Am., N.A.,* 50 Cal.4th 1389, 1395 (2010) ("no one disputes that when an

9    employee sues to recover both unpaid final wages and the resulting section 203

10   penalties, the suit is governed by the same three-year limitations period that would apply

11   had the employee sued to recover only the unpaid wages").

12   53.    Here, there are at least 145 putative class members in California whose

13   employment with Defendant ceased since September 9, 2017.  Assuming the putative

14   class members had the same pay rate as Plaintiff, $25.41 and assuming an eight hour

15   work day for the period of September 9, 2017, forward, (*id.*) and the maximum thirty

16   days allowed by statute, the amount in controversy on this claim is approximately

17   $884,268 ((8 hours x $25.41) x 30 days x 145).  Thus, the amount in controversy on

18   Plaintiff's claim for failure to timely pay all waged due at discharge is approximately

19   **$884,268**.

20                    **4.    Amount in Controversy – Claim for Attorneys' Fees**

21   54.    Finally, Plaintiff seeks attorneys' fees and costs in his FAC, which

22   must also be considered in determining whether the jurisdictional limit is met. FAC,

23   Prayer for Relief.  Thus, the Court must consider attorneys' fees in determining whether

24   the amount in controversy is met as it is well-settled that claims for statutory attorneys'

25   fees are to be included in the amount in controversy.  *See, e.g.*, *Kroske v. U.S. Bank*

26   *Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *cert. denied*, 127 S.Ct. 157 (2006); *Galt G/S*

27   *v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an

28   underlying statute authorizes an award of attorneys' fees, either with mandatory or

discretionary language, such fees may be included in the amount in controversy.")

55.     In California, it is not uncommon for an attorneys' fee award to be twenty-five to thirty-three percent of a settlement or judgement.  *See, e.g., McGuigan v. City of San Diego*, 183 Cal.App.4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Vasquez v. Cal.*, 45 Cal.4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties); *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1216–18 (2008) (affirming award of $757,000 in attorneys' fees plus a multiplier that equated to total fees of $1,199,500 in class case involving violations of a living wage ordinance, the California Labor Code, as well as unfair competition and contract claims); *c.f.*, *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F.Supp.2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

56.     The attorneys' fees benchmark in the Ninth Circuit is 25%. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent.") (citation omitted); *Lo v. Oxnard Euro. Motors, LLC*, 2012 US. Dist. LEXIS 73983, *8-9 (S.D. Cal. May 29, 2012) ("The Ninth Circuit has accepted as a benchmark for an attorneys' fees award twenty-five percent of the common fund recovery.")

57.     Based on the above, the amount in controversy for meal period premiums, rest period premiums, unpaid overtime, and failure to pay at time of termination penalties is conservatively **$5,159,372**.  This subtotal exceeds $5,000,000 absent any inclusion of attorneys' fees.  However, taking into account attorneys' fees at the benchmark percentage of 25% further increases the amount in controversy. The Court should therefore consider attorneys' fees of at least **$1,289,843** as part of the amount in controversy, for a total amount in controversy of **$6,449,215**.

### 5.  Summary of Amount in Controversy

58.      Plaintiff's allegations combined with the conservative calculations set forth above establish that the amount in controversy for (i) unpaid overtime; (ii) rest period premiums, (iii) meal period premiums, and, (iv) waiting time penalties, combined with attorneys' fees, is at least **$6,449,215.**

| Plaintiff's Alleged Claims | Amount in Controversy Conservative Estimate |
|---|---|
| Meal Period Premiums | **$1,800,044** |
| Rest Period Premiums | **$1,800,044** |
| Unpaid Overtime | **$675,016** |
| Failure to Timely Pay Wages Penalties | **$884,268** |
| Attorneys' Fees | **$1,289,843** |
| **Amount in Controversy** | **$6,449,215** |

59.      Removal of this action is therefore proper as the aggregate value of Plaintiff's class causes of action for unpaid overtime, unpaid meal and rest periods premiums, final wages not timely paid, and attorneys' fees is well in excess of the CAFA jurisdictional requirement of $5 million.   See 28 U.S.C. § 1332(d)(2). Additionally, had Defendant factored in Plaintiff's claims for unpaid minimum wages, failure to timely pay wages during employment, failure to maintain required records, failure to furnish accurate wage statements, and unpaid business reimbursements, they would only serve to further increase the amount in controversy.  Accordingly, the $5 million jurisdictional amount requirement of the CAFA is easily met.

60.      Defendant provides the foregoing calculations only to demonstrate that the amount placed in controversy by Plaintiff's FAC easily exceeds the amount in controversy requirement of the CAFA.  Defendant makes no admission of any liability or damages with respect to any aspect of this case, nor does it endorse or concede that the proffered methodology for such calculations for purposes of demonstrating that the jurisdictional minimum is met could be used in lieu of individualized inquiries or

1   otherwise.

2   ## VI.   <u>NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT</u>

3       61.       Contemporaneously with the filing of this Notice of Removal in the

4   United States District Court for the Central District of California, the undersigned has

5   arranged for providing written notice of such filing to Plaintiff's counsel of record.  In

6   addition, copies of this Notice of Removal will be filed with the Clerk of the Superior

7   Court of the State of California, County of San Bernardino.

8       WHEREFORE, Defendant hereby removes this action from the Superior Court

9   of the State of California, County of San Bernardino, to the United States District

10  Court for the Central District of California.

11  Dated:       September 20, 2021

12                                LITTLER MENDELSON P.C.

13

14                                _____

15                                Jennifer Robinson
                                  Elizabeth Staggs-Wilson
                                  Jyoti Mittal
16                                Attorneys for Defendant
                                  Mars Petcare US, Inc.

17

18  4832-0054-3227.2 / 101477-1004

19

20

21

22

23

24

25

26

27

28